UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANTWONE WILSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:19-cv-1474-RDP-GMB |
| OFFICER TUNSTALL, | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Antwone Wilson filed a *pro se* complaint seeking monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his civil rights during his incarceration at Donaldson Correctional Facility, in Bessemer, Alabama. Doc. 1. He names Officer Corbin Tunstall as the defendant. Doc. 1 at 2. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the magistrate judge for a report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

### I.   PROCEDURAL HISTORY

On December 18, 2019, the court entered an Order for Special Report directing the Clerk to forward copies of the complaint to Defendant and directing Defendant to file a special report addressing Plaintiff's factual allegations. Doc. 9. The court advised Defendant that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a

motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. Doc. 9. The order advised Plaintiff that, after he received a copy of the special report, he would have 21 days to file his initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1). Doc. 9.

On March 13, 2020, Defendant filed a special report, supplemented by affidavits and other evidence. Doc. 14. On March 16, 2020, the court notified the parties that it would construe the special report as a motion for summary judgment and notified Plaintiff that he had 21 days to respond to the motion for summary judgment by filing affidavits or other evidentiary materials. Doc. 15. The court also advised Plaintiff of the consequences of any default or failure to comply with Federal Rule of Civil Procedure 56. Doc. 15; *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On March 24, 2020, Plaintiff filed a response to the motion for summary judgment. Doc. 16.

## II.  STANDARD OF REVIEW

Because the court has construed the special report as a motion for summary judgment, Rule 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.

*Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is on the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to come forward with some evidence to support each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532–33 (11th Cir. 1990).  As the Eleventh Circuit has explained,

> [f]acts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations omitted)

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is *pro se*,

the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

### III.  FACTS

Plaintiff alleges that on March 30, 2019, after he set a small fire in his cell, Defendant Tunstall let him out of his cell without handcuffing him, then sprayed him with a fire extinguisher and punched him twice in the left eye. Doc. 1 at 5. Plaintiff asserts that Sergeant Fleeton witnessed these events. Doc. 1 at 5. Plaintiff claims that he was taken to the health care unit, where a body chart was completed and Sergeant Fleeton took pictures of his injuries. Doc. 1 at 5.

Defendant Tunstall provides a different version of these events. Doc. 14-1. After Plaintiff set a fire in his cell, Defendant claims that he sprayed a fire extinguisher through the tray slot to put out the fire. Doc. 14-1. Sergeant Fleeton then ordered Plaintiff to come to the tray slot to be handcuffed, but Plaintiff did not respond. Doc. 14-1. Fleeton instructed the cubicle officer to open the door, then told Defendant to place handcuffs on Plaintiff. Doc. 14-1. Plaintiff complied, and the officers escorted the him to the infirmary for a body chart. Doc. 14-1. Defendant denies any use of force at any time. Doc. 14-1.

According to an Incident Report completed by Fleeton, he and Defendant were called to Plaintiff's cell because other officers noticed a fire visible under the Plaintiff's cell door. Doc. 14-2 at 1. Defendant extinguished the fire by spraying the fire extinguisher through the tray slot door. Doc. 14-2 at 1. Fleeton then instructed Plaintiff to come to the tray door, but Plainitff failed to respond. Doc. 14-2 at 1. Because smoke filled the cell, Fleeton could not see Plaintiff. Doc. 14-2 at 1. Fleeton therefore instructed the cubicle officer to open the door. Doc. 14-2 at 1. Fleeton entered the cell, took Plaintiff by his right arm into the dayroom, and Defendant handcuffed him. Doc. 14-2 at 1. When Fleeton asked Plaintiff why he started the fire, Plaintiff responded, "I'm suicidal." Doc. 14-2 at 1. Fleeton and Defendant then escorted Plaintiff to the infirmary. Doc. 14-2 at 1. At that time, Plaintiff announced Defendant had punched him in the eye three times, although no force had been used. Doc. 14-2 at 1. After Plaintiff took a shower, he was placed in a cell on suicide protocol. Doc. 14-2 at 1. No disciplinary actions were taken. Doc. 14-2 at 1.

In an unsworn statement given by Plaintiff, he stated that he had been asking for several hours to be taken to the mental health department without success. Doc. 14-2 at 3. According to the body chart completed by a nurse immediately after the event, Plaintiff said that he was suicidal and claimed he had been punched three times in the eye. Doc. 14-4. The nurse noted that Plaintiff had a red, slightly swollen

area near his left eye and was covered in fire extinguisher residue "from head to toe." Doc. 14-4.

In his unsworn response to the motion for summary judgment, Plaintiff alleges that Sergeant Fleeton never ordered him to come to the tray door to be handcuffed, and instead opened his cell door without first restraining him, in violation of policy. Doc. 16 at 1. He states that the officers yelled at him to come out of the cell. Doc. 16 at 1. Moreover, he claims Defendant sprayed out the fire, then once the smoke cleared, emptied the entire fire extinguisher into the cell while laughing. Doc. 16 at 2. Plaintiff ran to the back of his cell to try to breathe through the window. Doc. 16 at 2. Once he walked out of the cell, Defendant "started swinging on me with both fists striking me 2 or 3 times in the left eye." Doc. 16 at 2. Therefore, Plaintiff refused to let Defendant cuff him. Doc. 16 at 2. Fleeton took the cuffs from Defendant and handcuffed Plaintiff. Doc. 16 at 2. Plaintiff further claims that he was placed in the crisis cell with no shower. Doc. 16 at 3. Fleeton and Defendant told Plaintiff that no disciplinary action would be taken against him if he remained quiet about the incident. Doc. 16 at 3.

## IV. ANALYSIS

### A. Official Capacity

Plaintiff fails to specify whether he is suing Defendant in his official or individual capacity. Sovereign immunity bars an official capacity claim. *Melton v.*

*Abston*, 841 F.3d 1207, 1233–34 (11th Cir. 2016); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a suit against a state official in his official capacity is a suit against the state itself); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (holding that the Eleventh Amendment prohibits a suit against a state absent the state's consent to the suit). To the extent Plaintiff brings a claim against Defendant in his official capacity, that claim is due to be dismissed.

**B.     Excessive Force**

The court construes the complaint as stating a claim for excessive force in violation of the Eighth Amendment to the United States Constitution.[1] *See, e.g.*, *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). This claim is analyzed under the standards set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). The analysis contains both a subjective and an objective component: (1) whether "the 'officials act[ed] with a sufficiently culpable state of mind,'" and (2) "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 & 303 (1991).

---

[1] While Plaintiff invokes both the Eighth and Fourteenth Amendments as causes of action (Doc. 1 at 3), as a convicted prisoner his claims arise solely under the Eighth Amendment. *See, e.g.*, *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (citing *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996)).

7

In *Hudson,* the Supreme Court held that in assessing an inmate's excessive force claim under the subjective component of the analysis "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.  The Supreme Court also set out factors that should be considered when evaluating whether any force was excessive: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id.*; *see also Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007).

Under the objective component, claims based on *de minimis* uses of physical force by prison guards are not cognizable; instead they must involve the type of force that is "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10.  The Supreme Court later clarified, however, that the core judicial inquiry is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7).  More specifically, whenever prison officials maliciously use force to cause harm, "contemporary standards of decency are always violated . . . whether or not significant injury is evident." *Id.*  However, a prisoner must show that "evidence

viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain." *Ledlow v. Givens*, 500 F. App'x 910, 913 (11th Cir. 2012) (quoting *Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987)).

Applying these principles to the facts of this case, and viewing the evidence in the light most favorable to Plaintiff, the material facts are as follows. Plaintiff set a fire in his cell. Defendant used a fire extinguisher to put out the fire, then sprayed the cell with the remainder of the extinguisher's contents. The officers opened the Plaintiff's cell door prior to handcuffing him, removed him from the cell, and then Defendant punched him twice in the left eye. Fleeton handcuffed Plaintiff and escorted him to the infirmary, where an nurse recorded that he was covered in fire extinguisher residue and had slight redness and swelling to his left eye.

First, Defendant's use of the fire extinguisher does not state an excessive force claim. The Eleventh Circuit has held that a correctional officer spraying a fire extinguisher into an inmate's cell after the inmate started a fire "is a response commensurate to the significant threat posed by a prison fire." *Burke v. Bowns*, 653 F. App'x 683, 698–99 (11th Cir. 2016). Accordingly, use of the fire extinguisher did not violate the Eighth Amendment.

Second, there is a genuine dispute of material fact as to Plaintiff's claim that Defendant punched him. Defendant states under oath that no force was used.

Plaintiff alleges otherwise in his verified complaint. On summary judgment, the court must credit Plaintiff's version of events. *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (holding that "when conflicts arise between the facts evidenced by the parties," the court must "credit the nonmoving party's version"). Accordingly, the court must accept as true that Defendant punched Plaintiff twice in the left eye after removing him from his cell but before handcuffing him.

      Even if a district court "believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices." *Miller v. Hargot*, 458 F.3d 1251, 1256 (11th Cir. 2006). Under the facts presented, a reasonable jury could find both that force was applied, and applied specifically for the purpose of "maliciously and sadistically . . . causing harm." *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). Conversely, a reasonable jury could find Defendant to be more credible, and thus determine that no force was used and that the swelling to Plaintiff's eye occurred prior to his contact with Defendant. Because the reasonableness of the use of force rests entirely on the question of who is to be believed, this dispute is inappropriate for resolution at the summary judgment stage. *See, e.g.*, *Miller*, 458 F.3d at 1256; *see also Dobbins v. Giles*, 451 F. App'x 849, 851 (11th Cir. 2012) (holding that a punch between the eyes and a slap of prisoner who could not transfer from his bed to his wheelchair—when there is "no need for force"—is "wanton and unnecessary").

Defendant's argument that Plaintiff must show "significant physical injury" (Doc. 14 at 13) misstates the law. *See, e.g.*, *Wilkins*, 559 U.S. at 37. Rather, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*. at 38. In other words, "objectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm." *Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002).

The question on summary judgment "is simply whether there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Sears v. Roberts*, 922 F.3d 1199, 1207–08 (11th Cir. 2019) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether or not Defendant used force against Plaintiff here is a question of credibility, properly reserved for trial.

**C.     Qualified Immunity**

Defendant claims that he is entitled to qualified immunity. Doc. 14 at 14. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). While Defendant acted within

his discretionary authority at all times relevant, the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted).  Accordingly, in light of the facts before the court, qualified immunity is inappropriate.

## V.   RECOMMENDATION

For these reasons, the magistrate judge RECOMMENDS that any claim against Defendant in his official capacity is be DISMISSED WITH PREJUDICE. The court further RECOMMENDS that the motion for summary judgment (Doc. 14) be DENIED as to Plaintiff's claim against Defendant in his individual capacity, and that claim be REFERRED to the magistrate judge for further proceedings.

## VI.   NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and

recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

Upon receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

DONE and ORDERED on May 13, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE